Fred BURTON, et al., Plaintiffs,

v.

Milton SHAPP, Governor of the Commonwealth of Pennsylvania; Israel Packel, Attorney General for the Commonwealth of Pennsylvania; Stewart Werner, Commissioner of the Bureau of Correction for the Commonwealth of Pennsylvania; James Howard, Warden of the State Correctional Institution at Pittsburgh; Charles Zimmerman, Deputy Warden of the State Correctional Institution at Pittsburgh; William Jennings, Deputy Warden of the State Correctional Institution at Pittsburgh; Lawrence Weyandt, Major of the Guards at the State Correctional Institution at Pittsburgh; John Jasak, Captain of the Guards at the State Correctional Institution at Pittsburgh; David Young, Casework Supervisor at the State Correctional Institution at Pittsburgh; Charles Kozakiewcz, Lieutenant of the Guards; James Robles, Sergeant of the Guards at the S.C.I. Pgh. in charge of the B.A.U.; Sergeant Caruthers, Sergeant of the Guards of the S.C.I. Pgh., in charge of the B.A.U., Their Agents Subordinates and Employees.

Frederick BURTON, Plaintiff,

v.

William B. ROBINSON, individually and in his official capacity as Commissioner of Corrections of the Commonwealth of Pennsylvania, together with his Agents and Successors in interest, Stewart Werner, individually and in his former official capacity as Commissioner of Corrections of the Commonwealth of Pennsylvania, Robert L. Johnson, individually and in his former official capacity as Superintendent of the State Correctional Institution at Graterford Pennsylvania, Julius T. Cuyler, individually and in his official capacity as Superintendent of the State Correctional Institution at Graterford together with his Agents and Successors in interest, Joseph Brierly and Gilbert A. Walters, individually and

in their former official capacities as Superintendent of the State Correctional Institution at Pittsburgh, Pittsburgh Pennsylvania, James E. Howard, individually and his official capacity as Superintendent of the State Correctional Institution at Pittsburgh together with his Agents and Successors in Interest.

Civ. A. Nos. 74–1101, 78–381.

United States District Court,
W. D. Pennsylvania.

Nov. 5, 1980.

Paul Gettleman, Zelienople, Pa., for plaintiff.

Deborah A. DeAugustino, Egler & Reinstadtler, Jose Hernandez–Cuebas, Asst. Atty. Gen., Commonwealth of Pennsylvania, Pittsburgh, Pa., for defendants.

### OPINION

WEBER, Chief Judge.

On August 23, 1978, this court held that the Commonwealth of Pennsylvania, Bureau of Corrections, could no longer hold Frederick Burton confined in the Behavioral Adjustment Unit at the State Correctional Institution in Pittsburgh consistent with the requirements of due process.* Confinement in the Behavioral Adjustment Unit is a type of limited solitary imprisonment imposed either for security or disciplinary reasons. Burton was serving sentences for two unrelated homicides, in both cases the victims being law enforcement officials with whom he had had no previous contact. On May 31, 1973, while serving his first sentence for homicide in Holmesburg Prison, Burton, with another inmate, was involved in the fatal stabbing of the Warden and Deputy Warden of Holmesburg Prison. Burton was transferred ultimately to the Western Penitentiary in Pittsburgh where he has been confined during the period subsequent to his charges except for some removal for attendance at trial. In 1976, Burton was convicted for his participation in the deaths of the Holmesburg Prison officials.

We will not here review the various factors leading to the continued detention of Burton in the Behavioral Adjustment Unit. Nonetheless by the time of the evidentiary hearing in this case in May 1978 and the Opinion and Order of the Court on August 23, 1978, we found them no longer valid. We stated at page 8 of the typescript Opinion "because we must give great deference to the experience and judgment of prison authorities, we will not substitute our judgment for theirs at this time. Rather we believe that the State must immediately develop criteria for objectively evaluating the future or potential danger posed by Burton...". Thus we came to a conclusion that the Commonwealth had failed to give Burton minimum due process protection by its subjective evaluation of his conduct and by its denial of opportunities for him to demonstrate good behavior outside the BAU.

The Commonwealth has complied with our Order and in gradual stages Burton has been returned to the general prison population. We are now faced with the question of the monetary damages demanded in Burton's suit.

We have held additional hearings on this matter and invited the submission of briefs. No actual economic loss was proven. Other contentions about lack of dental and medical care, lack of vitamins and psychological trauma are unsupported by the evidence. This is not to say that the Court regards unjustifiable continued confinement in a Behavioral Adjustment Unit as not being susceptible of compensation by monetary damages; the Federal Courts in Pennsylvania have considered the matter and have concluded that a figure of $25 per day for the days spent in unjustifiable solitary confinement represents a reasonable award for

---

* Published under name of *Mims v. Shapp,* 457 F.Supp. 247 (W.D.Pa.1978).

this type of injury.** We will accept that figure and pass on to the time period which we believe to be truly compensable.

Plaintiff argues that the entire five year period of such confinement is compensable because no hearing was held before Burton's initial confinement in the BAU, and not until 1975 did the prison authorities begin regular monthly reviews of his status.

In addition to the view of the prison officials of the nature of the offenses for which Burton was serving, both involving law enforcement officers, and the second involving prison officials, was a pervasive view that Burton was entirely uncooperative with prison officials who attempted to determine the motives for his behavior. Until 1977, after Burton's conviction for his participation in the homicide of the Holmesburg officials, Burton, on the advice of his counsel, remained entirely uncommunicative with the efforts of the prison officials to inquire into his motivation. Plaintiff's counsel points to a report of the defendant Howard, made May 17, 1977 in which he recites that "for the last 13 months Burton has been cooperative, informative, and has agreed to go along with anything that the PRC would recommend". Plaintiff argues that this is the minimal date for the commencement of the running of a period for the assessment of damages because it demonstrates a time when the major reason for defendants' course of conduct had disappeared.

The defendants argue, reading from the court's findings of August 23, 1978, that the court had found the defendants to be justified in maintaining the plaintiff in the BAU until such time as the court set the guidelines and perimeters for their future actions. We resist this argument. It is defendants' obligation to run the prison properly, not the court's.

■ The answer, perhaps, lies somewhere in between. Individuals and public officials must bear a certain measure of responsibility for their own actions. Their actions do not become improper only when a court has told them so. The court reviews the past history to determine whether a defendant's past actions have conformed to the standard expectable of him and in the instant case we found that whatever justification existed in the past for the conduct of the prison officials toward Burton this had ceased and a new pattern was mandated. This did not mean that no violation had occurred until the Court declared a violation. Because defendants had failed, at some time prior to the date of hearing to take the action required, it became necessary for the court to order done what should have been done by the defendants in carrying out their responsibilities under the law. All that we can say from the evidence in the present case is that from sometime after May of 1977, when the Warden became aware of the new cooperative attitude of the plaintiff Burton, a different course of action was imposed upon the defendants. It can be noted that subsequent to the Warden's report a psychological report of July 8, 1977 gave the Warden reason for continued concern. At least by May 1978 when the hearing was held, the denial of plaintiff's due process rights became so evident that the court enjoined them. We cannot accept the Commonwealth's argument that no damages should arise until the effective date of the order of August 23, 1978 requiring steps to be instituted by September 12, 1978, which were in fact instituted on September 25, 1978 resulting in not more than 14 days deprivation of due process.

We must be arbitrary: sometime after mid–1977 it became apparent that Burton's behavior pattern was changing to the extent that he might be considered for less restrictive treatment in the BAU; by May 1978 it was apparent that there was no longer any reason for continued confinement in the BAU in the absence of an effective program establishing criteria for such confinement beside those which had been applied by defendants before.

** See *U. S. ex rel. Neal v. Wolfe*, 346 F.Supp. 569 (E.D.Pa.1972). *Mack v. Johnson*, 430 F.Supp. 1139 (E.D.Pa.1977).

Also *Taylor v. Clement*, 433 F.Supp. 585 (S.D. N.Y.1977). *Sostre v. Rockefeller*, 312 F.Supp. 863 (S.D.N.Y.1970).

We will, therefore, conclude that the appropriate date for the assessment of damages here is a reasonable period subsequent to plaintiff's change in attitude, manifested in 1977, during which the state should have initiated steps to establish the criteria for his continued incarceration. In the absence of a more definite time we will conclude that January 1, 1978 is the appropriate date for the beginning of the period of liability for damages, said period to run to September 25, 1978, when said due process violation was ended.

We, therefore, conclude that Burton is entitled to damages for 268 days of illegal detention in the BAU at the rate of $25 per day in the total sum of $6,700.

We find no basis for the award of punitive or exemplary damages. We find no evidence of bad faith, malice or aggravating circumstances. We have considered the situations of the defendant prison officials, the demands and responsibilities placed upon them, and the physical facilities provided to them by the state to meet those demands. The prison officials were faced for a long time with a prisoner involved in two separate homicide cases in which the victims were authority figures, a policeman and prison officials. The prisoner for much of this period was uncommunicative because of his interpretation of his defense counsel's instructions. Even when a possibility of less restrictive application of segregated custody appeared, the defendants had doubts that the conditions at Western Penitentiary were adequate to this, and recommended his transfer. The court finds no basis for the application of any punitive damage standard. The actual damage award for illegal custody on a per diem basis adequately serves the reasons for any imposition of punitive damage.