Juan COLES

v.

Mark LEVINE, etc., et al.

Civ. A. Nos. M–79–436, M–79–448.

United States District Court,
D. Maryland.

March 22, 1983.

William F. Ryan, Jr., Edward F. Houff, and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., for plaintiff.

Stephen H. Sachs, Atty. Gen. of Maryland, Philip M. Andrews and Richard B. Rosenblatt, Asst. Attys. Gen., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, Juan Coles, alleged deprivations of his constitutional rights by the named defendants in his two consolidated *pro se* complaints filed pursuant to 42

U.S.C. § 1983.[1] On March 23, 1982, this court held that the defendants Jackson, Miller, Barthlow, Grogan, and Williams deprived the plaintiff of his rights under the Due Process Clause when they failed to notify him of the possibility of a parole revocation and they held a hearing regarding plaintiff's infractions of institutional rules less than 24 hours after notice of the charges was given to him.[2] This case was then remanded to the Magistrate for a determination of the amount of damages, the appropriate declaratory or injunctive relief, and the amount of attorneys' fees to be awarded to counsel for the plaintiff. The Magistrate's Report and Recommendation was filed on December 14, 1982[3] and objections thereto have been received.[4] After reviewing the Magistrate's Report, the pleadings, and the evidence, this court concludes that the award of nominal damages recommended by the Magistrate is appropriate, but disagrees with the recommended equitable relief, and therefore, the recommended award of attorneys' fees.

## I. *Liability*

■ The defendants, Jackson, Miller, Barthlow, and Williams, contest the finding of liability and any award of monetary damages, citing the recent Fourth Circuit holding in *Ward v. Johnson,* 690 F.2d 1098 (4th Cir.1982). In addition, the defendant Grogan, found liable by this court under Count II of the complaint, requests reconsideration of that decision, contending (1) lack of sufficient evidence, or (2) the existence of facts establishing a good faith defense.[5]

Focusing now more directly than previously upon what Grogan actually did, the court has now concluded that Grogan is not liable for the due process deprivations suffered by the plaintiff. While it is clear that DCR 105–2 prohibited the holding of any hearing within 24 hours after notice of the infraction had been given and that Officer Grogan knew or should have known of the 24-hour rule, Grogan was not a member of the CAT and played no part in the decision to conduct the hearing at the time when it was held. He was merely a conduit to relay to plaintiff decisions which had been made by others. Moreover, he was not successful in his efforts to have plaintiff come to the hearing before the Classification Adjustment Team (CAT) before the 24 hours had elapsed. (Tr. 233–34).[6] Therefore, this court concludes that the defendant Grogan's actions did not contribute to the procedural deprivations.

■ A further review of the record by the court indicates that the defense of good faith immunity is available to defendant Williams, the Warden at MHC. His testimony reveals that his review of the CAT determination was based upon the CAT's Decision and Recommendation Form. (Plaintiff's Exh. No. 12). That form indicates that the CAT decided to hold the hearing in absentia only after 24 hours had elapsed. (Tr. 160–61). While defendant Williams is charged with reviewing the CAT determinations for, among other things, procedural errors (Tr. 123), it appears that he neither knew nor should have known of the procedural error committed by the Adjustment Team. *See Harlow v.*

1. *See* Papers No. 1 in M–79–436 and M–79–448. The issues raised by these complaints were clarified in the Amended Complaint, Paper No. 37 (the cases were consolidated and all papers were filed in M–79–436) filed by plaintiff's counsel.

2. *See* Paper No. 84 at 8–9 and n. 11.

3. Paper No. 90.

4. Papers No. 91 & 92.

5. Paper No. 91, ¶ 1. The defendants' motion is titled Objections to the Magistrate's Report and Recommendation of December 23, 1982, but the substance of paragraph 1 of defendants' motion is a Motion for Reconsideration. The defendants contend that absolute immunity bars any monetary award against defendants Jackson, Miller, Barthlow, the members of the CAT, and Williams, the Warden at the Maryland House of Correction (MHC), and reassert the previously addressed grounds as to defendant Grogan.

6. Transcript of the trial conducted on April 27–29, 1981 before Magistrate Klein.

*Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Consequently, defendant Williams is relieved of any personal liability for violation of the 24-hour rule.

■ The liability of the remaining defendants charged under Count II must be upheld since the acts giving rise to liability in this case do not fall within the narrowly defined area to which the protection of the doctrine of absolute immunity has been afforded members of CATs by the Fourth Circuit in *Ward v. Johnson,* 690 F.2d 1098.

In *Ward,* the Fourth Circuit upheld a claim of absolute immunity by a member of a CAT where that defendant, during the course of the infraction hearing, ruled that the plaintiff would not be permitted to call three witnesses because the defendant had determined that their testimony would be irrelevant or cumulative. Judge Russell reasoned that when, in the course of an administrative adjudicatory proceeding, an official's act was the functional equivalent of that of a judge in a judicial setting, absolute immunity for that act was appropriate. Under this functional comparability test,[7] absolute immunity is not available when the official's acts are,

> "Administrative or investigative actions or . . . actions without the officer's jurisdiction or in a proceeding lacking the normal characteristics or attributes of a judicial proceeding with 'many of the same safeguards.'[8] . . . available in a judicial process."

To avoid any later broad claims of absolute immunity, Judge Russell explained the conclusion that had been reached on the facts in *Ward* as follows:

> "We are not concluding that in connection with all prison disciplinary hearings the members of the Adjustment Committee enjoy absolute immunity. Perhaps this case would be different if the plaintiff had been denied absolutely any 'adversary' hearing or if he had been denied any notice of the charge against him, or if he had been denied the right to confront and cross-examine his accusors at the disciplinary hearing . . ., but that is not the case here."

In *Ward,* the hearing was conducted according to Virginia procedure which gave the accused inmate every procedural right he could have enjoyed if tried in a court.

In the present case, the plaintiff was denied Due Process when the CAT held a hearing on the charged infractions less than 24 hours after the plaintiff received notice of those charges. The acts of the defendants did not occur during an administrative proceeding with the safeguards necessary to deter unconstitutional conduct. *Id.,* at 1106. The acts of the defendants did not occur in proceedings functionally comparable to judicial proceedings; actually, those acts denied to the plaintiff the proceedings outlined in *Butz* and insured that the hearing would not be an adversary one.[9] The Fourth Circuit did not intend to insulate every act by a member of an Adjustment Team with a defense of absolute immunity.

---

**7.** The functional comparability test was enunciated by the Supreme Court in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), when reviewing whether executive officials of the Department of Agriculture should be permitted the defense of absolute immunity.

**8.** The safeguards outlined by the Supreme Court in *Butz* are as follows:
"(1) The administrative proceedings should be 'adversary in nature;' (2) the officer exercising the adjudicatory power in the administrative proceeding should not be subject to supervision or direction of other employees engaged in investigative or prosecutorial duties; (3) a party should be entitled to offer either oral or written relevant and non-repeti-

tive evidence on his behalf; (4) the record of the proceedings should be duly recorded and, so recorded, should constitute the exclusive record for decision; (5) the proceedings should be so structured as to assure the exercise by the officer in his decision of independent judgment on the evidence before him; (6) the proceedings should be such to prevent the damage of retaliatory response by the disappointed inmate to an adverse decision; and (7) there should be reasonable opportunity for the parties involved to challenge by appeal the decision."
*Ward v. Johnson,* 690 F.2d 1098, 1105–6 (4th Cir.1982).

**9.** *See* Note 8 *supra,* Safeguard No. 1.

The holding in *Ward* does not encompass acts by Adjustment Team members performed, as here, outside of structured adversarial proceedings and there is no justification for extending that holding. The facts of the case *sub judice* do not support a claim of absolute immunity.

## II. Amount of Damages [10]

At the CAT hearing which was held in the plaintiff's absence, the Adjustment Team found the plaintiff guilty of the infractions and sentenced him to eight months of segregation.[11] In addition, the CAT revoked the plaintiff's probation and imposed an additional thirty days of segregation. This sentence was approved by defendant Williams, and the plaintiff served nine months of punitive segregation.

In his original memorandum[12] in support of plaintiff's damages and in his subsequent objections to the Magistrate's Report and Recommendation of December 14, 1982,[13] the plaintiff, through his counsel, contends that he should be compensated for the entire amount of time he spent in segregation as having been wrongfully suffered as a result of the denial of Due Process. He requests compensation in the amount of $25.00 a day for the nine-month period.

■ In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court recognized that in an action under § 1983 for deprivation of procedural due process, a plaintiff must prove that he actually was injured by the deprivation of process before he may recover substantial monetary damages. The Court rejected any presumption of damages and noted that,

> "where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But as the Court of Appeals held, the inquiry caused by a justified deprivation, including distress, is not properly compensable under § 1983. This ambiguity in causation ... provides additional need for requiring the plaintiff to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself."

*Id.* at 262–63, 98 S.Ct. at 1051–52. Thus, the Court carefully outlined the causation requirement which must be met when presenting the claim for damages resulting from the deprivation of Due Process.[14] A court must determine what injuries arise solely from the deprivation of Due Process, not what injuries occur subsequent to the denial of Due Process.

The Fourth Circuit, in *Burt v. Abel,* 585 F.2d 613 (4th Cir.1978),[15] reviewed the causation distinction set out by the Supreme Court in *Carey* and agreed that the plaintiff must prove that the procedural deprivation caused some independent compensable harm, separate and apart from any distress felt from the justified deprivation of the

---

10. Although this court agrees with the recommendation of the Magistrate, the objections raised by the plaintiff indicate that a discussion of the basis of the Magistrate's Recommendation is necessary. In addition, because there has been minimal prior judicial consideration of the application of *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), to circumstances in which the denial of Due Process rights occurs in an inmate's disciplinary hearing, this court concludes that a discussion is appropriate.

11. Plaintiff's Exh. No. 12.

12. Paper No. 86.

13. Paper No. 92.

14. The Supreme Court approved the Court of Appeals ruling which required the District Court to determine whether the "[respondents] would have been suspended even if a proper hearing had been held. 545 F.2d [30], at 32." *Carey,* 435 U.S. at 261 n. 16, 98 S.Ct. at 1051 n. 16. The Court cautioned, however, that this determination should include consideration of any mitigating circumstances to which the procedurally deprived individual could point.

15. In *Carey,* the Supreme Court dealt with deprivation of procedural due process that should have been provided to public school students before being suspended from school. The Fourth Circuit made it clear that the holding of *Carey* was not limited to its facts, but applied "whenever the only constitutional deprivation suffered is procedural in nature." *Burt v. Abel,* 585 F.2d 613, 615–16 (4th Cir.1978). *See* Paper No. 90, at 4.

substantive right. *Id.* at 616. Because plaintiff Burt's discharge from her teaching position was with just cause, she was not allowed to prosecute a claim for pay or retirement fund contributions which were lost to her through her discharge, not as a result of the due process deprivation. The Fourth Circuit did, however, remand for consideration of any mental distress suffered by the plaintiff.

In *Ward v. Johnson,* 667 F.2d 1126 (4th Cir.1981), *rev'd on other grounds,* 690 F.2d 1098 (4th Cir.1982),[16] the Fourth Circuit held that the plaintiff was entitled to only nominal damages for the violation of his right to procedural due process. While the plaintiff, an inmate at the Mecklenburg Correctional Center, as a result of the defective hearing had lost eight recreational periods, he had not shown any special injury

resulting from the deprivation of due process. *Id.,* at 1131.[17]

When a due process violation occurs, the courts cannot presume that everything occurring subsequently is a result of the procedural deprivation. When an inmate is not afforded the procedural protections to which he is entitled, the District Court must determine whether the denial of due process caused the resulting deprivations for which damages are sought.[18] *Carey,* 435 U.S. at 261, 98 S.Ct. at 1051. When the deprivation would have been suffered even if the proper procedure had been followed, then the lack of that procedure did not cause the deprivation and an award of damages for the same is unjustified.[19]

The plaintiff has not proved that the holding of the hearing less than 24 hours

---

**16.** Although the finding of liability was overturned on appeal, the discussion of damages in this earlier opinion by the Fourth Circuit is instructive.

**17.** *See also Hughes v. Rowe,* 449 U.S. 517, 101 S.Ct. 173, 180, 66 L.Ed.2d 163 (1980) (J. White, concurring) *Owen v. Lash,* 682 F.2d 648, 652 (7th Cir.1982); *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 729–30 (5th Cir.1982); *Kendall v. Board of Ed. of Memphis City,* 627 F.2d 1 (6th Cir.1980); *West v. Williamsport Area Comm. Col.,* 492 F.Supp. 90, 96–97 (E.D. Pa.1980). These cases recognize the causation distinction outlined in *Carey* and require the plaintiff to distinguish between a deprivation caused by the justified denial of substantive rights and a deprivation from the denial of procedural due process.

**18.** *But see* Note, *Damage Awards for Constitutional Torts: A Reconsideration After Carey v. Piphus,* 93 Harv.L.R.Ed. 966 (1980) (noting that the determination of damages as outlined under *Carey* is insufficient in compensating deprivations of constitutional rights, and the writer urges Congress to adopt a fixed minimum damage award for individuals who have been denied procedural due process).

**19.** The court realizes that the cases cited by the plaintiff were submitted in part to support the appropriateness of the $25.00 a day in damages sought by the plaintiff for his term of segregation. A review of the facts of these cases, however, reveals that damages, for time spent in segregation, were awarded when the conditions of segregation themselves amounted to constitutional violations, or where the punishment was not or might not have been justified. Although many of the cases were decided be-

fore *Carey,* damages for Due Process violations were not presumed by the courts.

In *O'Connor v. Keller,* 510 F.Supp. 1359 (D.Md.1981), damages of $100 a day were awarded when the court concluded that the plaintiff's Eighth Amendment rights had been violated. *See also Wright v. McMann,* 321 F.Supp. 127 (N.D.N.Y.1980), *affirmed in part,* 460 F.2d 126 (2d Cir.1972); *Sostre v. Rockefeller,* 312 F.Supp. 863, 885 (S.D.N.Y.1970); *rev'd in part sub nom., Sostre v. McGinnis,* 442 F.2d 178 (2d Cir.1971), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) (these cases hold that the conditions of segregation were violations of the inmates' Eighth Amendment rights to be free of cruel and unusual punishment).

A review of the facts of the remaining cases cited by the plaintiff reveals that periods of segregation in those cases were not justified. *See United States v. Oswald,* 510 F.Supp. 583 (2d Cir.1975) (isolation sentence is not justified for the possession of political papers); *Burton v. Schapp,* 500 F.Supp. 760 (E.D.Pa.1980) (segregation no longer justified for non-cooperation); *United States v. Wolfe,* 346 F.Supp. 569 (E.D. Pa.1972) (segregation not justified for pursuing review of an imposed fine in other legal activities); *Sostre,* 312 F.Supp. 863 (segregation not justified when imposed for petitioner's pursuit of legal and Black Muslim activities).

In *Mack v. Johnson,* 430 F.Supp. 1139 (E.D. Pa.1977), the court found that the plaintiff suffered his term of segregation because he was denied a procedurally adequate hearing when he was not permitted to explain his actions. Because this case was decided before *Carey,* the question of whether the segregation was justified despite the due process violation was

after the notice of infraction and the failure to notify him of the possibility of probation revocation caused the term of segregation to be imposed. Rather, the period of segregation was imposed because the plaintiff Coles violated prison rules. Plaintiff admitted that he attempted to escape from the University of Maryland Hospital by impersonating a doctor (Tr. 20, 26–27) and that while at the hospital he attacked Louis Prout (Tr. 31, 67). Thus, this court concludes, as the Magistrate correctly concluded, that even if the defendants had afforded the plaintiff the proper procedure, his probation still would have been revoked and the term of segregation would have been imposed. Consequently, the court concludes that the segregation was justified, that there were no mitigating circumstances, and that there was no term of segregation suffered as a result of the denial of the plaintiff's Due Process rights.[20] Furthermore, there was no evidence offered by the plaintiff to show that he suffered any mental, emotional,[21] or physical distress because of the procedural irregularities. Therefore, the court concludes that the plaintiff has suffered no actual injury from the denial of due process for which he must be compensated and that the award of nominal damages is proper.

III.  *Injunctive and Declaratory Relief*[22]

A.  *Plaintiff's Request Nos. 1, 2, 3.*

■ The plaintiff has requested that this court enter an order declaring,

"(1) That the Plaintiff's rights to Due Process of law protected by the Fourteenth Amendment to the United States Constitution were violated at the Classification Adjustment (CAT) hearing held January 4, 1979, because the hearing was held less than 24 hours after notification of some of the charges against the Plaintiff, and because the CAT revoked a prior probative sentence without any prior notification to the Plaintiff that the CAT would consider the revocation of probation.

(2) That the Plaintiff's rights to Due Process of law were again violated when the Defendant Williams, then acting as the Warden of the Maryland House of Corrections, approved the CAT findings in full when he knew or should have known of the defective nature of the proceedings."

Because the same findings undergird Request No. 1 as those set out in this court's Order of March 31, 1982 when the defendants Johnson, Barthlow, and Miller were found liable of depriving the plaintiff of his Due Process rights, the first declaration (Request No. 1) is appropriately entered by the court.

In light of this court's conclusion that the defendant Williams should be relieved of any liability for the denial of the plaintiff's Due Process rights, the second declaration (Request No. 2) is inappropriate and will not be entered by the court.

not clearly addressed. The plaintiff's excluded testimony questioned his culpability for the charged infractions and, therefore, it is not clear that the segregation in this case was justified. Therefore, under *Carey,* an award of damages for the time spent in segregation could have been properly assessed.

20.  Defendant Williams testified that if he had known that the correct procedure had not been followed he would have revoked sentence (Tr. 159). This statement, however, does not, as the plaintiff contends, establish that the denial of due process caused segregation to be imposed. Defendant Williams purportedly approved the disciplinary action believing that the proper procedure was followed. (Tr. 159). Apparently, then, the Warden agreed that seg-

regation was justified if the proper procedures had been followed.

21.  The purpose of procedural due process is to convey to the individual a feeling that a government has dealt with him fairly, as well as to minimize the risk of mistaken deprivations of protected interests. The Fourth Circuit and the Supreme Court intimate that the only damages which would be suffered from a denial of procedural due process are those of emotional or mental distress. *Carey,* 435 U.S. at 262–64, 98 S.Ct. at 1051–52; *Burt,* 585 F.2d, at 616. This court need not explore this possible limitation because no evidence of any injury, physical or mental, is supported by the facts of this case.

22.  *See* Paper No. 86, at 6–8.

The plaintiff next requests that the court declare the following:

"(3) That the Plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, as made applicable to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution, when he was placed in segregation for 270 days as a result of the defective CAT hearing and the defective approval for those hearings as outlined in paragraphs one and two above."

As the sole constitutional deprivation found in this case was the denial of due process, this relief is not justified.[23]

B. *Request Nos. 4, 5, 6—Expungement*

In request number 4, plaintiff seeks to have all the documents which mention the hearing or subsequent segregation removed from the files at MHC.[24] The Magistrate recommended that expungement be granted.

The courts' power to expunge matters from records is one of "exceedingly narrow scope," *Rogers v. Slaughter,* 469 F.2d 1084, 1085 (5th Cir.1972), to be reserved for extreme cases, *Bromley v. Smith,* 561 F.2d 1351, 1364 (10th Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978); *Paine v. Baker,* 595 F.2d 197, 201 (4th Cir.1979), and is not to be used routinely. *United States v. Schnitzer,* 567 F.2d 536 (2nd Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978). The mere fact that an individual is not convicted on the charges on which he was arrested does not entitle him to ex-

pungement of the arrest record. *Coleman v. United States Dep't of Justice,* 429 F.Supp. 411 (D.Ind.1977). Rather, expungement is ordinarily reserved for remedying the denial of an individual's constitutional rights.[25] *See, e.g., United States v. McLeod,* 385 F.2d 734, 750 (5th Cir.1967).

Where an inmate has been denied procedural due process during institutional disciplinary hearings, the equitable remedy of expungement may be available. *See Bradley v. Coughlan,* 671 F.2d 686, 690 n. 9 (2nd Cir.1982). A deprivation of procedural protections, however, does not automatically result in an expungement of the record.

In *McDonnell v. Wolff,* 483 F.2d 1059 (8th Cir.1973) *affirmed in part, rev'd in part,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Eighth Circuit affirmed the District Court's order to expunge from prison records determinations of misconduct arrived at in hearings which were procedurally inadequate. The Supreme Court, however, reversed because the procedural protection had not been firmly established at the time of the disciplinary hearing. *Wolff,* 418 U.S. at 573–74, 94 S.Ct. at 2983. *See also McKinnon v. Patterson,* 568 F.2d 930, 935 (2nd Cir.1977).

Because expungement is the destruction of historical fact, expungement is not automatic even where the deprived constitutional right is established at the time of a deprivation. Determining whether an order directing expungement is appropriate involves a balancing of interests; "the harm caused to an individual must be weighed against the utility to the Government of their [the records] maintenance." *Paton v. LaPrade,* 524 F.2d 862, 868 (3d Cir.1972).

23. *See also* Part II of this Memorandum and Order, *supra.*

24. Request No. 4 reads as follows:

"(4) That all documents reflecting the CAT hearing, the facts surrounding the CAT hearing, and the plaintiff's subsequent incarceration and segregation as a result of that hearing should be expunged by the physical removal of all documents including incident reports from all MHC files, and including but not limited to plaintiff's base file and any and all other files presented to or reviewed by any individuals, commissions, and/or boards which make decisions concerning parole, probation, security classification, work release, work assignment and/or camp center assignment."

25. Some courts have, however, permitted expungement of an individual's arrest record where no unconstitutional conduct is present, but the indictment was dismissed and considerable time has passed since his arrest. *See Diamond v. United States,* 649 F.2d 496, 497 (7th Cir.1981); *United States v. Bohr,* 406 F.Supp. 1218 (E.D.Wisc.1976).

"Factors to be weighed in balancing are the accuracy and adverse nature of the information, the availability and scope of dissemination of the records, the legality of the methods by which the information was compiled, the existence of statutes authorizing the compilation and maintenance, and prohibiting the destruction, of the records (sic), and the value of the records to the Government." [26]

*Id.* at 869.[27]

The plaintiff in the present case would have been found guilty of the charged infractions even if he had been afforded the procedural protections due him. Expungement would erase from the inmate's files any record of his improper behavior and justified segregation. The relief requested by the plaintiff then would necessarily remove accurate information from the files at the Maryland House of Corrections.

Those courts which have recognized a right of expungement of inmate files have done so where the information recorded therein was inaccurate with serious repercussions. In *McDonnell v. Wolff,* 483 F.2d at 1064 n. 7, the court supported the ordered expungement by noting that the record entry,

"may follow him [the inmate] throughout the prison system; if his punishment was without cause, he is punished anew each time his record is used against him. * * Similarly, his disciplinary record may affect his eligibility for parole." *Hudson v. Hardy,* 137 U.S.App.D.C. 366, 424 F.2d 854, 856 (1970) (Citations and footnote omitted).

This statement illustrates the importance of maintaining an accurate record of an inmate. The records are relied on by both the Parole Board and subsequent disciplinary teams. In the case *sub judice,* the record also reveals the animus between Mr. Coles and his attacker, Mr. Prout. Institution officials are required to institute, and with this information would be able to institute, protective measures.[28] The files of an inmate are a necessary aid in the determination of both his rights and privileges during confinement. *See Bradley,* 671 F.2d at 690 n. 9, *citing Powell v. Ward,* 487 F.Supp. 917, 935 n. 16 (S.D.N.Y.1980), *modified,* 643 F.2d 924 (2nd Cir.1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). The need to retain accurate prison records is, therefore, apparent.

The statement from *Hudson,* quoted in *Wolff,* illustrates that harm is suffered by the plaintiff, where his records are retained after a procedurally inadequate hearing, only when the punishment accorded him "*was without cause.*"

The importance of maintaining accurate inmate files was highlighted by the Fourth Circuit's decision in *Paine v. Baker,* 595 F.2d 197. In *Paine,* the court recognized a claim seeking expungement of information from an inmate's file where the information contained in the file of an inmate was false. It was not sufficient to support such a claim, the court emphasized, that the information is true but deemed prejudicial by the inmate. *Id.,* at 201.

Similarly, under the present circumstances, where the plaintiff was denied procedural due process but the holding of the CAT was accurate, the information contained in the file, while prejudicial, is not inaccurate and should not be expunged. The denial of Coles' procedural rights did not create an inaccurate record of his actions nor of the

---

**26.** The Fourth Circuit has not addressed the appropriate factors to be weighed when determining whether expungement should be ordered as part of a plaintiff's relief for denial of procedural due process. In view of this court's holding that, before an expungement of records will be ordered, plaintiff must establish that the sentence which he seeks to have expunged was an unjustified deprivation, guidance from the Fourth Circuit on the entire panoply of factors to be balanced is unnecessary.

**27.** "We do not decide the relative importance to be attached to each of the factors." *Paton v. LaPrade,* 524 F.2d 862, 869 n. 6 (3d Cir.1972).

**28.** *See Withers v. Levine,* 615 F.2d 158 (4th Cir.1980); *Penn v. Oliver,* 351 F.Supp. 1292 (E.D.Va.1972).

fact of justified punitive segregation, and future reliance on the plaintiff's records is justified.[29] Any future limitations suffered by the plaintiff because of a review of his records will not be caused by the denial of his Due Process rights.[30]

Concluding that expungement is not warranted, the plaintiff's Request for Relief Nos. 4, 5, and 6 are denied.

### C. Request Nos. 7, 8.

In Request No. 7 the plaintiff requests that the defendants be enjoined from violating the plaintiff's rights in the future. This requested relief is too broad and is, therefore, denied.

■ Finally, in Request No. 8 the plaintiff seeks the clarification of DCR 105–2 so as to provide to a prisoner the same notice of procedural protections before revocation of the probated sentence as are provided before imposing a sentence for the original infraction.

The defendants have informed the Court, by letter, that a notice of the possibility of probation revocation is now included in the standard Notice of Infraction form provided to an inmate after he has been charged with an infraction.[31] After reviewing the text of this notice,[32] the court concludes that the relief sought by the plaintiff in Request No. 8 has been provided, and an order directing such a notice is now unnecessary.

### IV. Attorneys' Fees

■ The review of the Report and Recommendation of December 14, 1982 reveals that the magistrate correctly applied the criteria set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974),[33] with the emphasis recognized by the Fourth Circuit in Anderson v. Morris, 658 F.2d 246 (4th Cir.1981). The magistrate carefully reviewed the request for attorneys' fees [34] and addressed each of the defendant's contentions.[35] In light of our de-

---

**29.** Thus, this court has concluded that the accuracy of an inmate's files is the most important factor identified by the Paton court. See note 26 and accompanying text, supra. In identifying the importance of the accuracy factor, this court examined the other factors enumerated in Paton: the value of the records, the availability of the records, the scope of the dissemination of the records, and the adverse scope of the information. The Paton court specifically left open the question of the importance to be assigned to any particular factor. See note 29, supra. While this court has assigned greater importance to one of the factors, that conclusion was not reached without examination of the other Paton factors. Therefore, even under the Paton balancing test, expungement would be denied.

**30.** It would appear to be inconsistent to deny monetary damages because the segregation was justified, and yet order the expungement of all records of that segregation.

**31.** See letter from Richard Rosenblatt, Assistant Attorney (Jan. 24, 1983) and enclosed revised form. (Paper No. 93).

**32.** The text of the revision is as follows:
"NOTE: If you are currently on probation by virtue of a previous adjustment violation, please be aware that your probation may be revoked by committing another offense and all sanctions deferred as a result of that pro-

bation may be added to those received, if you are found guilty of a current offense."

**33.** The criteria in Johnson was adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir.), cert. denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

**34.** See Paper No. 90, at 10–18. See also Paper No. 89.

**35.** By letter the defendants have supplemented their contention that the attorneys' fees should be reduced for time spent on non-meritorious claims with the recent case of McCann v. Coughlin, 698 F.2d 112 (2nd Cir.1983). (Paper No. 94).

The magistrate and this court have considered the results obtained (Johnson factor No. 8) when computing the appropriate fee. See Planned Parenthood Association of Kansas City v. Ashcroft, 655 F.2d 848, 872 (8th Cir. 1981), cert. granted, 456 U.S. 988, 102 S.Ct. 2267, 73 L.Ed.2d 1282 (1982), cited in, McCann, 698 F.2d, at 129. Therefore, this court concludes that the reduction in the fee award, ordered by this court, appropriately maintains the "fine balance which will neither encourage frivolous claims to be brought in conjunction with the substantial ones, nor discourage parties from raising issues where the likelihood of success is uncertain." McCann, 698 F.2d, at 129.

**156**

cision to deny expungement, the results obtained by the plaintiff are less than that accorded him by the magistrate. Consequently, the preliminary award of attorneys' fees, determined by the magistrate to be $15,520.00 shall be reduced by fifty (50) percent, or $7,760.00. Including expenses and fees for the presentation of the counsel fee petition, $1635.94 (*See* Paper No. 90, at 18), the award of attorneys' fees is $9,395.94. Accordingly, it is this 22nd day of March, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion for Reconsideration of the liability of the defendants Jackson, Miller, and Barthlow is hereby DENIED, but said motion as to defendants Grogan and Williams is GRANTED.

2. The Magistrate's Report and Recommendation as to Plaintiff's Damages is accepted and affirmed, and the damages shall be so awarded.

3. That the Magistrate's Report and Recommendation as to Declaratory and Injunctive Relief is hereby accepted in part and denied in part as set forth in the body of this Order.

4. That the Magistrate's Report and Recommendation as to Attorneys' Fees is hereby modified, and counsel fees and expenses shall hereby be awarded plaintiff's counsel in the amount of $9,395.94.

5. That the Clerk is instructed to mail a copy of this Memorandum and Order to counsel for the parties.