**Frederick Robert PAINE, Appellee,**

v.

**Ben L. BAKER, Supervisor of Records, and the North Carolina Department of Corrections, Appellants.**

No. 78–6213.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1979.

Decided March 30, 1979.

James Peeler Smith, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen., Raleigh, N. C., Jacob L. Safron, Special Deputy Atty. Gen., Raleigh, N. C., on brief), for appellants.

E. Ray Stanford, Third Year Student (R. Michael Wells, Frye, Booth & Porter, Winston-Salem, N. C., on brief), for appellee.

Before JACK R. MILLER, Judge, Court of Customs and Patent Appeals, sitting by designation, HALL and PHILLIPS, Circuit Judges.

K. K. HALL, Circuit Judge:

Appellee Frederick Robert Paine, an inmate in the North Carolina Department of Corrections [hereinafter "Department"], filed this action in district court against the Department seeking to inspect his prison file and all interdepartmental memoranda relating to him. Although he styled his action Request for Production of Documents, Fed.R.Civ.P. 34, the district court properly construed the *pro se* paper as a

complaint under 42 U.S.C. § 1983. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The court granted relief, holding that Paine's entitlement to inspect his file was grounded in N.C.G.S. §§ 148–74, 148–76.[1] In denying the Department's subsequent motion for reconsideration the court expanded its earlier holding, stating that "[the Department has] failed to justify the infringement upon this *constitutionally protected right* [of access.]" (Emphasis added) The Department appeals, and we reverse.

On appeal Paine argues that an alternative ground for relief should be recognized by this court: the right of an inmate to have erroneous information expunged from his file. Although we agree and hold today that a limited right, grounded in the due process clause, does exist, we find it unnecessary to remand this case for reconsideration as the record conclusively shows that Paine has not been denied the right and thus cannot invoke the jurisdiction of the district court under 42 U.S.C. § 1983.

I.

The district court first held that Paine's right of access to his prison file derived from N.C.G.S. §§ 148–74 and 148–76. The court felt it unreasonable to make the records available "to almost anybody," *see* note 1 *infra*, while denying access to the inmate himself on a theory of confidentiality. *Paine v. Baker*, No. 77–266–CRT (E.D. N.C., Dec. 14, 1977), Memorandum Opinion at 1. Without addressing the soundness of this reasoning, we note that the court's

---

1. § 148–74. Records Section.—Case records and related materials compiled for the use of the Secretary of Correction and the Parole Commission shall be maintained in a single central file system designed to minimize duplication and maximize effective use of such records and materials. When an individual is committed to the State prison system after a period on probation, the probation files on that individual shall be made a part of the combined files used by the Department of Correction and the Parole Commission. The Secretary of Correction shall cooperate in joint efforts aimed at developing accurate and comprehensive case records on individual offenders. The adminis-

tration of the Records Section shall be under the control and direction of the Secretary of Correction.

§ 148–76. Duties of Records Section.—The Records Section shall maintain the combined case records and receive and collect fingerprints, photographs, and other information to assist in locating, identifying, and keeping records of criminals. The information collected shall be classified, compared, and made available to law-enforcement agencies, courts, correctional agencies, or other officials requiring criminal identification, crime statistics, and other information respecting crimes and criminals.

interpretation of North Carolina's statutory scheme directly contradicts the interpretation of the State's highest court. In *Goble v. Bounds*, 13 N.C.App. 579, 186 S.E.2d 638 (1972), the Court of Appeals of North Carolina held that prison records are confidential and are not subject to inspection by the inmate concerned, but only by those persons specifically named in the statute. The North Carolina Supreme Court affirmed. *Goble v. Bounds*, 281 N.C. 307, 188 S.E.2d 347 (1972). "It is too well settled to admit of argument that the federal courts are bound by the interpretation placed upon the statutes of a state by its highest court . . . ." *Ferguson v. Manning*, 216 F.2d 188 (4th Cir. 1954). Therefore the holding of the district court, insofar as it rests upon an interpretation of state law inconsistent with the interpretation of the North Carolina Supreme Court, is reversed.

## II.

■ In denying the Department's motion for reconsideration the district court held, without elaboration, that a state prison inmate has a constitutionally protected right of access to his prison file. We find this holding to be in conflict with our opinion in *Franklin v. Shields*, 569 F.2d 800 (4th Cir. 1978) (en banc), *aff'g in part and rev'g in part* 569 F.2d 784 (4th Cir. 1977), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978).

In *Franklin*, a panel of this court considered the nature and extent of procedural safeguards which are constitutionally required in state parole proceedings. The panel concluded, *inter alia*, that a state prisoner has a right to inspect his file in order to ensure the accuracy of that file. 569 F.2d at 794–95. Although the district court had found that erroneous information was contained in the respondents' files, the panel's decision did not rest on that ground but was rather a broad prophylactic rule of access for *any* prisoner who was to be con-

sidered for parole. A majority of the court sitting en banc reversed this portion of the panel's opinion, finding no constitutional requirement that a prisoner have access to his file. 569 F.2d at 800. "[T]he only explicit constitutional requisite is that the Board [of Parole] furnish to the prisoner a statement of its reasons for denial of parole." *Id.* at 801. The court did not address the issue of whether a prisoner's allegation that erroneous information is contained in his file may state a claim of constitutional magnitude.

■■ Paine argues that the holding in *Franklin* should be limited to its facts—right of access before parole hearing—and that a general right of access is constitutionally mandated before or after other prison disciplinary proceedings involving forfeiture of statutory privileges.[2] We disagree. "The burden cast upon the State by such a requirement clearly outweighs any interest of the prisoner . . . ." *Franklin v. Shields*, 569 F.2d at 799 (Field, J. dissenting from panel opinion). The Department has represented to this court that it maintains a central record file on the prison records of more than 15,000 prisoners, who are housed in more than 80 separate locations. Any across-the-boards rule of access would clearly be an overwhelming administrative burden; and "what an inmate might find most often upon inspection of institutional files is that there is 'some evidence' to support [an adverse administrative decision], but evidence which he believes is outweighed by other facts." *Williams v. Ward*, 556 F.2d 1143, 1160 (2d Cir.), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977). The federal courts are not an appropriate forum to review the discretionary decisions of prison administrators which are based on evidence conflicting in nature and degree.

Therefore the holding of the district court, insofar as it rests on the court's view that a prisoner has a constitutional right of access to his prison file, is reversed.

---

**2.** *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Paine's argument would also seem to imply that the reasoning of *Franklin* should not be extended to deny right of access to files after denial of

parole. *But see Billiteri v. United States Board of Parole*, 541 F.2d 938, 945 (2d Cir. 1976), citing *Haymes v. Regan*, 525 F.2d 540, 544 (2d Cir. 1975).

## III.

After the Department filed its motion for reconsideration, Paine submitted a paper denominated Motion for Leave to File Amended Complaint.[3] In this he asserted that he had been denied parole because of his past criminal record and poor prison adjustment, and implied that information in his file must be false to support such a finding. On appeal, Paine contends that he has a cognizable due process right to have his correctional file free from allegedly incorrect prejudicial information.

We hold today that in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree. We recognize that some burden will necessarily be cast upon the prison system and upon the federal courts; we also recognize that the limitations we impose on this cause of action may be viewed by prisoners as a halfway measure. But in this nascent area "the definition of minimum due process is often sensitive to what proves necessary *in practice* to a fair procedure," *Williams v. Ward*, 556 F.2d at 1160, and we are confident that our decision today reflects a proper balancing of the inmates' need for some safeguard, the proper circumstances in which the safeguard may be invoked, and the potential burden on prison administrators.

### A. *Substantive Elements*

An inmate must first allege that particular information is contained in his file. It is, of course, difficult in the ordinary course of events for a prisoner who has never seen his file to know what information is contained therein. But experience teaches that in many instances prisoners do gain such knowledge, *e. g., Kohlman v. Norton,* 380 F.Supp. 1073 (D.Conn.1974) (parole denied because file erroneously indicated that applicant had used gun in committing robbery), and a requirement of particularity is necessary to discourage fishing expeditions through files. *Cf. Jones v. Superintendent,* 460 F.2d 150, *reh. denied,* 465 F.2d 1091 (4th Cir. 1972), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1380, 35 L.Ed.2d 611 (1973). It is not sufficient that the inmate allege that "something must be wrong;" nor may he simply set out the true facts and demand assurances that the information in the file comports with those facts.

Second, the inmate must affirmatively plead that the information in his file is false. It is not sufficient that the information is true but the inmate nonetheless deems it prejudicial. *Cf. United States v. Doe,* 556 F.2d 391 (6th Cir. 1977) (no expunction of record of conviction, where record accurately reflected that conviction had been set aside). Similarly, it is not sufficient that the inmate disputes evaluations and opinions regarding him. *E. g., Williams v. Ward, supra* (inmate disagreed with psychiatric evaluation contained in file). This is the situation mentioned earlier, where there is " 'some evidence' to support [the adverse administrative decision], but evidence which [the prisoner] believes is outweighed by other facts." *Williams v. Ward,* 556 F.2d at 1160. The federal courts will not oversee the discretionary decisions of prison administrators and second-guess their evaluations. Our concern is where the administrators rely on information which is false. *Cf. Meachum v. Fano,* 427 U.S. 215, 228–29, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

Third, the inmate must allege that the information is relied on to a constitutionally significant degree. We do not require that an inmate wait until an adverse

---

3. Although Paine submitted this *pro se* paper on February 3, 1978, more than a month before the district court ruled on the motion for reconsideration, the paper was not filed until June 1, 1978 due to an error on the part of the staff of the Clerk of the District Court. Thus the district court did not have the document before it at the time it ruled on the motion. The parties agree that we should consider the paper on appeal, in order that neither side be penalized for a clerical error not of their own making. We agree and consider the paper, which has been made a part of the record on appeal, in this portion of our opinion.

decision has been rendered,[4] but think that under certain circumstances he could allege that the false information is such that prison officials are likely to rely on it.

■ The requirement of reliance to a constitutionally significant degree has two dimensions. The first is the nature of the adverse administrative decision made on the basis of erroneous information. If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake and the due process clause is called into play. *See Franklin v. Shields, supra*; *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Although other administrative actions such as transfer to another penal facility or status classification have been held without the ambit of the due process clause, *see Meachum v. Fano, supra*; *Cooper v. Riddle*, 540 F.2d 731 (4th Cir. 1976), in many situations an adverse decision in such matters may have collateral consequences touching on the liberty interest. *Cf. Wolff v. McDonnell*, 418 U.S. at 564–65, 94 S.Ct. 2963. We think a well-pleaded complaint alleging such circumstances would be sufficient. However, we do not think that an administrative decision regarding such purely internal matters as work assignments within the prison would reasonably affect a subsequent decision such as eligibility for parole. Thus an allegation that false information was relied on to make such a decision would not be constitutionally significant. In a close case, however, the benefit of the doubt should be given the inmate.

■ The nature of the false information is the second dimension. If the alleged error is a technical one which would not reasonably be a factor relied on in the decision-making process, then no claim for re-

lief will lie. If the error is more significant, i. e., involving the inmate's past criminal record or his record of disciplinary offenses while in prison, then it may reasonably be relied on and fundamental fairness requires its expunction. *Cf. Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). The federal courts do have equitable power to order expunction, e. g., *United States v. Doe, supra*, although that power is used sparingly. *E. g., Bromley v. Crisp*, 561 F.2d 1351, 1364 (10th Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978).

### B. Jurisdictional Predicate

■ 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, *subjects, or causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof *to the deprivation of any rights, privileges, or immunities* secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added) We have today announced a right secured to state prison inmates by the Constitution, to have prejudicial erroneous information expunged from their prison files; but we think that, as a jurisdictional predicate to filing an action under § 1983, the inmate must allege that the prison officials have deprived him of this right. This means that application for expunction must be made in the first instance to prison authorities.

■ This is not a requirement of exhaustion, *see Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), but rather a requirement of jurisdiction. *E. g., Parker v. Letson*, 380 F.Supp. 280, 282–83 (N.D.Ga.1974). State prison authorities cannot be said to have denied an inmate's right to have erroneous information ex-

---

4. We realize, of course, that an inmate is more likely to know that false information is contained in his file after an adverse action is taken. For instance, we have held that the inmate must be given a statement of reasons for denial of parole. *Franklin v. Shields, supra*. The statement could indicate the presence of false data in the file.

punged from his file, unless they have been requested to do so and have refused. The prior application to prison authorities is a means to forestall a *threatened* deprivation of constitutional rights; after such application the erroneous information may be expunged and the inmate would then have " 'nothing to complain about in either a state or federal court.' " *Id.* at 282 (citations omitted). *See also Mendez v. Heller*, 530 F.2d 457, 461 (2d Cir. 1976) (where plaintiff challenging constitutionality of state residency requirement for divorce had made no attempt to secure a divorce, action brought under § 1983 did not present " 'exigent adversity' which is an essential condition precedent to federal court adjudication.")

 An inmate who believes his file to contain false information should notify prison officials of this fact in writing, specifying what information he believes is false and what the true facts are. The prison officials will be given a reasonable time to respond.[5] If the officials inform the inmate that the challenged information is *not* in fact in his file, no further action will lie, as we presume the good faith of prison authorities. If the officials find that erroneous information is contained in the file, the information should be expunged and the inmate so notified. If the officials inform the inmate that the challenged information is in his file, but they consider it to be correct, the inmate should be informed of the basis of the officials' belief and the inmate's letter should be placed in his file. The inmate will have an action in district court under § 1983 to challenge the validity of the information and seek its expunction; but while such action is pending, any persons examining the file will be put on notice that a dispute exists as to the validity of certain facts. An action will also lie where prison officials fail to respond to the inmate's request within a reasonable time. Having requested relief from the prison

authorities and been denied same, the inmate can affirmatively plead that he has been deprived of a constitutional right—the language of § 1983.

### Conclusion

The record in this case conclusively shows that Paine has not made a request of prison officials that erroneous information be expunged from his file. He has therefore not been deprived of this right, and the district court would be without jurisdiction on remand to consider the claim under § 1983. The judgment of the district court is reversed, and the complaint is dismissed.

*REVERSED; COMPLAINT DISMISSED.*

---

5. We think that in most instances prison officials should respond within 60 days. If resolution of the disputed facts is not possible within that time, the inmate should be so notified. If administrative action, i. e. parole hearing, is pending within the 60 days, the inmate's letter should be put in his file so that persons using the file will be put on notice that particular facts are disputed.