Orillion JAMES, Plaintiff,

v.

David ROBINSON, et al., Defendant.

Civ. A. No. 3:93CV678.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 16, 1994.

Orillion James, pro se.

M. Christine Maggard, Sp. Asst. Atty. Gen., State of Va., Richmond, VA, for defendant.

### MEMORANDUM

LOWE, United States Magistrate Judge.

Plaintiff, a Virginia state prisoner proceeding *pro se* and *in forma pauperis,* brings this Section 1983 action alleging that his prison records contain false information thus denying him good time credit points and hindering his ability to be paroled. He seeks compensatory damages in the amount of $250,-000, punitive damages in the amount of $250,-000, and an injunction requiring defendants to expunge his records of all false educational information. Jurisdiction is appropriate pursuant to 28 U.S.C. §§ 1343(a)(3) and 636(c).

Plaintiff alleges:

1.  Defendants all together maintain educational (false) records on plaintiff indicating that the plaintiff can only read at the fifth grade level. Furthermore, Mr. Robinson after conversations with plaintiff has indicated that he doesn't believe that plaintiff has a GED diploma and therefore, he will not expunge plaintiff's records to reflect that he is a high school graduate.[1]

2.  Defendant Bruce has personally reduced plaintiff's GCA points to seventy-six from a possible one hundred. Secondly, he stated to plaintiff that he was reducing plaintiff's status from GCA level one to GCA level two on plaintiff's next annual review before the ICC. This was due to his belief

---

1. Defendants maintain that plaintiff's records reflect that he has a GED.

that plaintiff was not able to read above the 5th grade level. Even after two conversations with Mr. James, Bruce failed to expunge the false information.

3. The Virginia Department of Corrections, through Mr. Joe Hana, principal of the DCE school, maintains this false information in school files under his control. He has had several conversations with plaintiff relative to the false information contained under his control. Nevertheless, Mr. Hana has failed to remove this information. Due to the actions of the defendants good time credit points have been denied to the plaintiff herein this action. All of the requests by plaintiff to obtain his good time credit points have repeatedly been denied by defendants.

4. Prison policies also allow for the parole board to deny parole to plaintiff due to the false education information in his records.[2]

Defendants have filed their motion for summary judgment with supporting affidavits denying that the information in plaintiff's file is erroneous or false.

In *Paine v. Baker,* 595 F.2d 197 (4th Cir.), *cert. denied,* 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979), the Court held that exhaustion of state remedies was a jurisdictional prerequisite to an inmate's right to challenge the validity of information in his prison file. The Court went on to state the essential elements of any section 1983 challenge to information in an inmate's file:

An inmate must first allege that particular information is in his file.... Second, the inmate must affirmatively plead that the information in his file is false.... Third, an inmate must allege that the information is relied on to a constitutionally significant degree.... The requirement of reliance to a constitutionally significant degree has two dimensions. The first is the nature of the adverse administrative decision made on the basis of erroneous information. If the information is relied on to deny parole or statutory good-time credits, the in-

mate's conditional liberty interest is at stake and the due process clause is called into play....

*Id.* at 201–02. Under the dictum in *Paine,* an inmate would have been able to obtain a judicial determination of the validity of material contained in his file once he alleged (1) the material was false; (2) the material might effect his good conduct allowance (GCA) level or parolability; and (3) he had asked prison officials to remove the material. *Id.* at 203. The entire premise for the *Paine* dictum was that an inmate had a liberty interest in parole and good time credits that was protected by the due process clause of the fourteenth amendment. However, the dictum in *Paine,* a panel decision, stands in stark contrast to *Franklin v. Shields,* 569 F.2d 784, 800 (4th Cir.) *(en banc), cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978).

In *Franklin,* a panel of the Fourth Circuit Court of Appeals found that the Virginia statutes created a protected liberty interest in parole including, *inter alia,* the right of inmates to inspect their files and challenge inaccuracies. 569 F.2d at 794–95. On reconsideration *en banc,* the Court held that whatever liberty interest an inmate might have had in parole, "the *only* explicit constitutional requisite is that the Board furnish a statement of its reasons for denial of parole." 569 F.2d at 801 (emphasis added).

■ Importantly, *Franklin* and *Paine* were both decided prior to the decision in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In *Greenholtz,* the Court held that there was no fundamental right to parole. *Id.* at 7, 99 S.Ct. at 2103–04. A state may, however, create a limited interest in parole if its parole statutes affirmatively require that parole be granted unless specified events occur. *Id.* at 12, 99 S.Ct. at 2106. *See Board of Pardons v. Allen,* 482 U.S. 369, 378, 107 S.Ct. 2415, 2420–21, 96 L.Ed.2d 303 (1987). The operative Virginia statute governing release on

---

2. Plaintiff asserts that defendants' actions allow the parole board to deny plaintiff parole. He makes this claim despite the fact that he is not eligible for discretionary parole until November 21, 1997.

parole is Va.Code § 53.1–155 (Michie Supp. 1994). It reads:

> No person shall be released on parole by the Board until a thorough investigation has been made into the prisoner's history, physical and mental condition and character and his conduct, employment and attitude while in prison. The Board shall also determine that his release on parole will not be incompatible with the interests of society or of the prisoner.

. . . . .

The Virginia statute, far from creating "a presumption that release will be granted," *Greenholtz* at 12, 99 S.Ct. at 2106, absolutely prohibits parole unless the Parole Board decides otherwise. Because the Parole Board has such unfettered discretion, the statute creates no protected liberty interest. *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir.1991) (*en banc*). *See also Allen*, 482 U.S. at 378–79, n. 10, 107 S.Ct. at 2421, n. 10, 96 L.Ed.2d 303 (1987). Nor have the regulations promulgated pursuant to § 53.1–136 (Michie 1988) impinged upon the absolute discretion of the Board when acting on parole applications. "Guidelines are strictly advisory for the Board members to follow at their discretion. The Guidelines do not replace the Parole Board members' authority to make decisions." Virginia Parole Board Parole Guidelines, p. iii (Jan. 1, 1992); Virginia Parole Board Policy Manual, § I (1988) (factors to be considered for guidance only). Finally, examination of the Virginia Parole Board Administrative Policy and Procedure Manual reveals nothing that would curtail the Board's discretion to act under Va.Code § 53.1–155. Neither the parole statute nor any parole regulation has created a liberty interest in parole sufficient to invoke the due process clause.

In Virginia, inmates may earn good conduct allowances. (GCAs). *See* Va.Code § 53.1–199 (Michie Supp.1994). The amount of earned GCA is used to reduce the actual term of confinement and ½ of the GCA is applied to reduce the minimum time before eligibility for parole. *Id.* Under the GCA system, inmates may be awarded credits ranging from zero to thirty days for every thirty days served depending upon the GCA class level.[3] The applicable statutes authorize, but do not mandate, awards of GCA to inmates. Va.Code §§ 53.1–199—53.1–201 (Michie 1988 & Supp.1994). Accordingly, the statutes themselves do not create a protected liberty interest in any particular GCA class. *See Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). There remains the question whether state regulations create a protected liberty interest in the GCA system.

Pursuant to Va.Code § 53.1–200, the state has promulgated Virginia Department of Corrections Division of Adult Services Division Operating Procedure (DOP) 806 (1991) governing the GCA system. Under the DOP, various officials complete evaluations of each inmate in five areas. DOP 806–7.5.[4] A numerical score is awarded to each area by the designated official. The numerical scores are added to yield a "total point score," from which GCA class level may be determined. DOP 806–7.6. However, a GCA class level determined by the total point score may be rejected if the classifying authority[5] believes: (1) one of the area scores is inordinately high or low; (2) an institutional infraction is, by itself, so serious as to warrant a decrease in GCA class level; (3) a significant decrease in any one of the areas evaluated warrants a lower GCA class level; (4) extraordinary improvement in any one of the areas evaluated warrants an advance in GCA class level; (5) a lack of program availability inordinately

---

3. There are four class levels set forth in the statute. Inmates in Class I earn GCA at a rate of thirty days for every thirty served; in Class II the rate is twenty days for thirty served; in Class III the rate is ten days for every thirty served; and in Class IV no GCA is earned. *See* Va.Code § 53.1–201 (Michie 1988).

4. The specific areas evaluated are: (1) personal conduct; (2) work and vocational assignments;

(3) educational programs; (4) participation in treatment programs; and (5) number and severity of disciplinary infractions.

5. A determination of GCA class levels is made by the Institutional Classification Committee (ICC) subject to approval by the institutions' warden. DOP 806–7.16, 7.17.

effects GCA class level; or (6) a longer period of adjustment is needed. DOP 806–7.7. What DOP 806–7.7 does is effectively grant absolute discretion to override GCA determinations based on total point scores and permit the ICC or the warden to decide the GCA class level to which an individual inmate may be assigned. Because of the discretionary override provisions, there is no protected liberty interest in remaining in or being assigned to a particular GCA class level. *See Slezak v. Evatt*, 21 F.3d 590, 594–95 (4th Cir.1994).

■ To summarize, inmates in Virginia have no protected liberty interest in release on discretionary parole or in earning good conduct allowances. Accordingly, inmates may not invoke section 1983 as a basis to attack the validity of materials considered in determining whether they should be released on parole or assigned to any particular GCA level. Thus, even under the three-part test in *Paine*, plaintiff has failed to state a cause of action because he cannot show that the allegedly false information "is relied on to a constitutionally significant degree." 595 F.2d at 201.[6]

■ To say that an inmate may not use § 1983 to challenge erroneous material in his prison file is not to say an inmate is totally without remedies to expunge false material. In Virginia, an inmate may challenge material in his file through the Inmate Grievance Procedure, DOP 10–2 (1993). *See* DOP 804 § 7–G. Moreover, in those rare instances where admittedly false material is intentionally used to inhibit parole or awards of GCA, federal jurisdiction might be asserted to prevent arbitrary and capricious action. *See Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir.1991). But, where, as here, the question is not the use of admittedly false information by the ICC or Parole Board, but whether the information was in fact false, there is simply no federal cause of action.

Accordingly, defendants' motion for summary judgment will be GRANTED.

---

**6.** In *Bloodgood v. Garraghty*, 783 F.2d 470 (4th Cir.1986), the Court impliedly rejected the dictum in *Paine* stating:

> It would involve an intolerable burden on courts and an unacceptable usurpation of parole authority if prisoners launched § 1983 actions to test the veracity of file contents in

every parole decision. Thus the oversight of federal courts has understandably been confined to matters of procedure. In the parole setting, procedural due process requires no more than a statement of reasons indicating to the inmate why parole has been denied.

*Id.* at 473 (citations omitted).