# CIRCUIT COURT OF LOUDOUN COUNTY

Vincent R. Ciaravella

v.

Ronald Angelone et al.

February 10, 1997

Case No. (Law) 18516

BY JUDGE THOMAS D. HORNE

This case is before the Court on a writ of habeas corpus ad subjiciendum. The petitioner claims that he is being unlawfully detained and prays for relief pursuant to Virginia Code § 8.01-654.

For the reasons hereinafter stated, the Court denies the petitioner the relief requested and will dismiss the petition.

Mr. Ciaravella bases his petition on several grounds. He alleges that the Respondents are withholding his parole in violation of Title 53.1 of the Code of Virginia. He further alleges that he has been denied due process and equal protection under the law. In addition, the petitioner maintains that he is entitled to relief from the application of ex post facto law, from cruel and unusual punishment in derogation of the Eighth Amendment of the U. S. Constitution, and from the impingement on his First Amendment right to associate freely.

Having previously been convicted on several criminal counts, the petitioner was, on December 19, 1994, sentenced by this Court to a total of ten years of confinement. Mr. Ciaravella was sentenced to five years for possession of PCP, three years for burning a cross, one year for driving after being adjudicated an habitual offender, and twelve months for driving under the influence, third or subsequent offense. The Court suspended the five-year sentence on the PCP conviction, to be served as five years supervised

probation once Mr. Ciaravella is released from confinement. Mr. Ciaravella is currently serving a sentence of four years and twelve months.

As an inmate within the Virginia Department of Corrections, the petitioner is subject to Title 53.1 of the Virginia Code, which provides regulations regarding credits and allowances, parole eligibility, and mandatory parole.

In March 1995, the petitioner had been assigned Class I status under § 53.1-201 for purposes of earning good conduct allowance credits. At that level of classification, he earned thirty days of good conduct allowance for every thirty days served. The petitioner was subsequently informed that his anticipated mandatory parole date was October 21, 1996, presuming that he would continue to earn good conduct allowance credits at the same rate. While serving his sentence at the Loudoun County Adult Detention Center, the petitioner earned good time credits as a Class I. He also participated in work release.

On June 7, 1996, this Court granted Mr. Ciaravella's motion to be placed on Home Electronic Incarceration. He was placed in the program on June 25, 1996. The petition for a writ of habeas corpus arises out of the petitioner's admission into the Home Electronic Incarceration Program.

This Court has jurisdiction over this case pursuant to the provisions of § 8.01-654(B)(1) of the Code of Virginia. In order to be granted the relief sought, the petitioner must demonstrate one of the following: (1) jurisdictional defects amounting to a want of legal authority for his detention. *Brooks v. Peyton*, 210 Va. 318 (1969); or (2) the deprivation of a constitutional right. *Griffin v. Cunningham*, 205 Va. 349 (1964); *Slayton v. Parrigan*, 215 Va. 27 (1974).

On October 3, 1996, the Department of Corrections notified this Court that the petitioner was to be paroled on October 23, 1996, pursuant to § 53.1-160 of the Code of Virginia. On October 21, 1996, the Department of Corrections notified the Petitioner that his mandatory release date had been changed to March 21, 1997. This change was due to the fact that once he had been placed on Home Electronic Incarceration, his classification for earning good conduct allowance credits had been changed to Class IV, for which he earned no credit.

Mr. Ciaravella claims that he is being unlawfully detained because his mandatory release date should have been October 23, 1996. He maintains that his being removed from Class I status to Class IV status and the consequent loss of good time credit earning capability violate the Virginia Code and the U. S. Constitution.

Parole dates are set according to statutory guidelines in the Commonwealth of Virginia. Virginia Code § 53.1-159 states that "[e]very person who is sentenced and committed under the laws of the Commonwealth to the

Department of Corrections ... shall be released on parole by the Virginia Parole Board six months prior to his date of final release." The petitioner does not allege any wrong to him based on this code section.

From this baseline date, set six months prior to the date of final release, inmates can earn credit for good time while incarcerated. Section 53.1-200 of the Code of Virginia, which provides conditions for good conduct allowances, empowers the Virginia Parole Board to regulate the earning of good conduct allowance credits. That section also prescribes certain types of programs for which the Board must require inmates' participation as a condition of earning good conduct allowance credits. Furthermore, the General Assembly, in § 53.1-201, dictates a classification system for good conduct allowance. Four classifications are described, ranging from Class I, where for every thirty days served, an inmate earns thirty days of good conduct allowance, to Class IV, where no credit is earned.

The petitioner claims that when he began Home Electronic Incarceration and was lowered to Class IV status, the state impinged his constitutional rights by failing to afford him due process and by violating the Code of Virginia.

In changing the mandatory release date, the Department of Corrections was not taking any credit which Mr. Ciaravella had earned away. Instead, it was readjusting the date of his release because he would no longer be earning credits at the rate which was presumed to continue when he was earlier apprised of his potential mandatory release date. The notice clearly stated that the date was subject to change.

The Court will consider the petitioner's due process claim first.

In *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864 (1983), the United States Supreme Court explained that "liberty interests protected by the Fourteenth Amendment may arise from two sources — the Due Process Clause itself and the laws of the States," *Hewitt* at 467. In that case, the Court alluded that, in earlier decisions, it had found that for parole and good-time credits issues, neither situation involved an interest independently protected by the Due Process Clause. *See Greenholz v. Nebraska Penal Inst.*, 442 U.S. 1, 99 S. Ct. 2100 (1979); *Vitek v. Jones*, 445 U.S. 480, 100 S. Ct. 1254 (1980). This Court therefore finds that, there being no liberty interest derived directly from the Due Process Clause, no relief will be granted on such claims brought in the instant matter.

Mr. Ciaravella asserts, additionally, that the laws of the Commonwealth create a protected liberty interest in earning good credit allowances. The statutory provisions regarding parole, the petitioner maintains, by the mandatory language used therein, create a liberty interest in mandatory parole and also in earned good time credits. Mr. Ciaravella relies on *Kentucky*

*Department of Corrections v. Thompson*, 490 U.S. 454, 109 S. Ct. 1904 (1989).

The Supreme Court had included in *Hewitt*, and later adopted in *Thompson*, the declaration that in order for a state "to create a protected liberty interest in the prison context, the state regulations must use 'explicitly mandatory language' in connection with the establishment of 'specific substantive predicates' to limit official discretion and thereby require that a particular outcome be reached upon a finding that the relevant criteria have been met." *Thompson* at 1910 (quoting *Hewitt v. Helms*, 103 S. Ct. 87 (1989)). More particularly, the regulation must require both that in administering the law that certain procedures are used and it must place specified substantive limits on the administrator's discretion. *Hewitt* at 471-72.

Section 53.1-159 of the Code of Virginia is drafted such that when the *Hewitt* standard is applied, it creates a protected liberty interest in the mandatory release date of a prisoner six months before his date of final release. In the case at bar, however, there is no proof that the Commonwealth has attempted to deprive the petitioner of his release at that time.

The provisions at issue are §§ 53.1-198, 53.1-199, 53.1-200, and 53.1-201. This Court finds that none of the above statutes meets the *Hewitt* standard. None of the statutes creates a protected liberty interest. In § 53.1-198 there is no mandatory language. The pertinent part of § 53.1-198, wherein eligibility for good conduct allowance is discussed, includes no mandatory language. For example, the first sentence of the provision reads, "Every person who, on or after July 1, 1981, has been convicted of a felony ... *may be* entitled to good conduct allowance not to exceed the amount set forth in § 53.1-201." (Emphasis added.)

Section 53.1-200 does contain mandatory language. "Regulations approved by the Board *shall* govern the earning of good conduct allowance. The regulations *shall* require, as a condition ..." exemplifies the tenor of this provision. The mandatory language, however, does not directly bear on the inmate and his ability to earn good time but instead directs the administration of the program by the Parole Board.

The actual mechanics of the good conduct allowance system are found in the Virginia Department of Corrections Division of Adult Services Division Operating Procedure. In *James v. Robinson*, 863 F. Supp. 275 (E.D. Va. 1994), the U. S. District Court ruled that there was no protected liberty interest in remaining in or being assigned to a particular GCA class level. *See Slezak v. Evatt*, 21 F.3d 590, 594-95 (4th Cir. 1994).

The classification system for good conduct allowance is prescribed in § 53.1-201. Again, mandatory language is employed ("Good conduct

allowances *shall be* based upon a four-level classification system. Such system *shall be* established as follows ....") (emphasis added), but here, as well, unlike § 53.1-159, the language is directed at administering the system and does not mandate anything which directly affects the length of the petitioner's confinement.

In short, the Court disagrees with the petitioner's view that the language in the statutes is mandatory and therefore creates a protected liberty interest. There being no liberty interest in good credit allowances either flowing directly from the Due Process Clause, as discussed above, or through the Virginia statutes, this Court finds that the Commonwealth has not denied the petitioner due process by changing his classification from Class I to Class IV.

This is consistent with the Eastern District of Virginia's finding in *Ewell v. Murray*, 813 F. Supp. 1180 (E.D. Va. 1983). That court concluded that "[t]he Virginia Code does not create a liberty interest in being placed in any particular good conduct allowance classification or in earning any particular number of credits; inmates have only a liberty interest in the opportunity to earn good conduct credits within a four-level classification system." The petitioner has not been removed from the program and thus has not lost the opportunity to earn credits. Were Mr. Ciaravella to return to confinement, which he is not prohibited from doing, the Respondent indicates that Mr. Ciaravella could resume earning credits.

The Court is mindful of the fact that, in this case, it was Mr. Ciaravella who requested entrance into Home Electronic Incarceration Program. By being admitted into the program, he gained certain advantages over being confined, but there are things he lost as well. Among other things, he was not provided room and board once put in the program. Earning good-time credits is another thing which those put on Home Electronic Incarceration are denied. The prevailing law demonstrates that such a denial does not amount to a restriction on protected liberty interests and does not require due process protections.

The Court denies Mr. Ciaravella's claim that he has been denied equal protection under the law. In order to demonstrate that he was denied equal protection of the law, he must show that similarly situated persons are subject to disparate treatment and that this disparate treatment has no rational basis. *United States v. Roberts*, 915 F.2d 889, 891 (4th Cir. 1990). There is no allegation that he has been treated differently than others similarly situated.

The petitioner's claim that the Commonwealth has applied the law ex post facto is also denied. A criminal or penal law must be retrospective to be considered ex post facto. *Weaver v. Graham*, 450 U.S. 24, 28 (1981). The statutes at issue in this matter, those providing for the good conduct allowances, were enacted prior to the petitioner's first offense, April 10, 1993.

Mr. Ciaravella had fair warning not only of the fact that the actions he was to undertake were defined in the Code as criminal, but the Code also provided the penalties associated with such conduct at the time before he acted.

The Court also denies relief to the petitioner based on First and Eighth Amendment claims.

Mr. Marks may draw an order of dismissal consistent with this opinion to which Mr. Collins may note his exception.