

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-7-2004

# Williams v. Fed Bur Prisons

Precedential or Non-Precedential: Non-Precedential

Docket No. 00-1986

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Williams v. Fed Bur Prisons" (2004). *2004 Decisions.* Paper 1111.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1986

HAYWOOD WILLIAMS, JR.,

Appellant

v.

FEDERAL BUREAU OF PRISONS AND PAROLE COMMISSION;
JOHN FANELLO, Warden @USP-Allenwood;
TRISH RODMAN, Acting Warden of Programs @USP-Allenwood;
VALERIE KEPNER, Acting Supervisor of Education @USP-Allenwood

Appeal from the United States District Court
for the Middle District of Pennsylvania
(Civ. No. 3:98-cv-01598)
District Judge: Hon. A. Richard Caputo

Argued: November 7, 2003

Before: McKEE and SMITH, *Circuit Judges*,
and GREENBERG, *Senior Circuit Judge*

(Opinion filed: January 7, 2004)

SANDRA KACZMARCZYK, ESQ.  (Argued)
AMAR D. SARWAL, ESQ.
GREGORY A. CASTANIAS, ESQ.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
        *Attorneys for Appellant*

THOMAS A. MARINO, ESQ.
United States Attorney
KATE L. MERSHIMER, ESQ. (Argued)
Assistant United States Attorney
United States Attorney's Office
Middle District of Pennsylvania
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108
         *Attorneys for Appellee*s

## OPINION

McKEE, *Circuit Judge*.

Haywood Williams, Jr., appeals from the district court's grant of summary judgment in favor of the defendants on his suit to expunge certain prison records, and for employment discrimination. For the reasons that follow, we will affirm the grant of summary judgment on the expungement claims and reverse on the employment discrimination and retaliation claims.

## I. FACTS

Inasmuch as we write only for the parties, we need not set forth in detail the rather extensive procedural background of this case. It is, however, necessary to recite some of the relevant history in order to place our discussion in context.

In 1979, Williams was convicted of possession of a firearm by a convicted felon,

in violation of 18 U.S.C. § 1202(a)(1),[1] in the United States District Court for the Eastern District of Virginia. A Presentence Report ("PSR") was prepared, and Williams was thereafter sentenced to two years imprisonment.

In 1980, he was convicted of narcotics conspiracy in violation of 21 U.S.C. § 846; managing a continuing criminal enterprise in violation of 18 U.S.C. § 848; three counts of interstate travel in aid of narcotics distribution in violation of 18 U.S.C. § 1952(a)(3); possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1); and distribution of heroin in violation of 21 U.S.C. § 841(a)(1).[2] The following day, the district court sentenced Williams to life imprisonment on the continuing criminal enterprise conviction, and imposed a consecutive prison term of forty-five years on the remaining counts. The sentencing was accelerated at Williams' request, and he was sentenced the day after the jury returned its guilty verdicts. Although the Probation Office prepared a PSR for the 1980 conviction, it consisted only of a face sheet, a second page noting the new conviction and ranges of punishment for each count, and a copy of the 1979 PSR.[3] Although these two federal sentences were imposed in 1979 and 1980,

_____

[1]18 U.S.C. § 1202 was repealed in 1986. The crime of felon in possession is now codified at 18 U.S.C. § 931(a).

[2]On June 21, 1991, the Court of Appeals for the Fourth Circuit vacated Williams' conspiracy conviction. *United States v. Williams*, No. 990-7400, 1991 WL 107588 at \*2 (4th Cir. 1991).

[3]Williams' 1979 and 1980 convictions were before the effective date of the Sentencing Guidelines, i.e., November 1, 1987.

3

respectively, Williams remained in state custody following his federal sentencing.

## A. The Presentence Report Issue.

In 1985, the Bureau of Prisons ("BOP") asked the Eastern District of Virginia's Probation Office to provide the 1980 PSR and/or an official statement of facts related to the 1980 convictions in anticipation of Williams' transfer to federal custody to begin serving his federal sentences. The document that the BOP received in response to this request was the face sheet and page 2 from the 1980 PSR, plus a "Statement of Facts." The BOP apparently believed that this document was the 1980 PSR. However, the "Statement of Facts" was actually the factual summary taken directly from the brief that the prosecuting attorney had filed in opposition to Williams' direct appeal from his 1980 conviction.

Relying upon this information, the BOP placed Williams into its Sophisticated Criminal Activity ("SCA") - Drugs Assignment, classification.[4] Williams subsequently requested a copy of his 1980 PSR under the Freedom of Information Act. In response, he received the document that the BOP received in 1985 (hereinafter "the 1985 version"), which the BOP mistakenly believed to be the 1980 PSR.

In 1994, Williams filed various motions to correct his sentence under Fed. R.

---

[4]The government says that this classification meant that Williams could not be housed with similarly classified inmates. Government's Br. at 14 n.4.

Crim. P. 35(a).[5] In January 1995, Williams, who was then confined at the USP in Allenwood, Pennsylvania, unsuccessfully filed an Administrative Remedy with the BOP asking to have the "improper presentence report," removed from his BOP central file. Williams complained that the BOP had failed to comply with the Privacy Act, 5 U.S.C. § 552a(e)(5), (g)(1)(C), and its own policies, because the accuracy of the 1985 version had not been established.

Williams appealed the denial of his grievance to the regional level, but the Regional Director denied his appeal. The Central Office noted that the issue was moot because the BOP had eliminated the SCA – Drug Classification on July 25, 1994.

Thereafter, the issue of the 1985 version being in Williams' prison file was apparently dropped for a while. Then, on April 17, 1998, Williams' Unit Manager at USP Allenwood wrote the Probation Office in the Eastern District of Virginia concerning Williams' claim of inaccuracies in his PSR. Chief Deputy Hale responded by advising that the confusion had been addressed when Williams was confined at USP Leavenworth.

### B. The Prison File Claim Regarding the FCI Memphis Homicide.

From April 20, 1989 until July 29, 1992, Williams was incarcerated at Federal Correctional Institution ("FCI") Memphis, Tennessee. Williams was transferred from FCI Memphis to FCI Oxford because of his suspected involvement in the homicide of

---

[5] We need not detail the several administrative steps taken in the interim to challenge or confirm the accuracy of the 1985 version.

another inmate. The government claims that this transfer was for administrative purposes for Williams' own protection because of concerns about inmate reprisals for Williams' role in the killing at FCI Memphis.

### C. Employment Discrimination Issue.

Williams began working in the Education Department at USP Allenwood on August 13, 1994. While in that department, he worked as a law clerk and remained in that position until November 13, 1995 when he was reassigned to various other work details.[6] He returned to his job as a law clerk in the Education Department on October 7, 1996, and continued to work in that capacity thereafter except for brief absences due to sickness or vacation.

The BOP has four pay grades for inmates assigned to jobs in institutions under its control. The lowest level is Pay Grade Four and the highest is Pay Grade One. There are a very limited number of Pay Grade One positions in any given institution, with only five percent of the inmates at any institution being permitted to be assigned to that pay grade.

The Education Department at USP Allenwood is assigned four Pay Grade One positions. Although there is no predetermined number of such positions in any given department, one has traditionally been assigned to the law clerk position in the law library at Allenwood. The other three Pay Grade One positions have been given to tutors.

---

[6]In 1971, while incarcerated at USP Atlanta on a drug charge, Williams received a LL.B. through correspondence from the Blackstone School of Law in Chicago, Illinois.

Williams began his job as a law clerk in the Education Department at USP Allenwood at Pay Grade Four; the lowest pay grade. However, over time, he was promoted to his then-current status of Pay Grade Two. In 1997, a Pay Grade One position opened in the Education Department. According to the government, the factors considered when filling a Pay Grade One position are the eligible individual's qualifications, past work performance, and seniority.

Here, the government claims that the Education Department considered the eligible inmates under consideration for Pay Grade One to be relatively equal. Initially, the Education Department selected two part-time employees who had the longest consecutive longevity. However, when informed that absent extenuating circumstances, the Pay Grade One position had to be given to a full-time employee, the Education Department told the most senior inmate that he would have to work full-time if he wanted to keep his promotion. The inmate agreed and was thus assigned to Pay Grade One.

Williams was eligible for Pay Grade One, but was not selected. According to the government, Williams was third on the eligibility list behind two other inmates who had more seniority having started on July 10, 1995, and September 26, 1996. Thereafter, a series of administrative filings ensued in which Williams asserted that he had been denied the Pay Grade One position because of race. The prison administrators claimed at different points in the process that the decision had been made based upon seniority, consecutive seniority, the greater responsibilities of the inmate who was selected over

Williams, and that inmate's proficiency in Spanish.

## D. The Good Time Credit Issue.

While Williams was at FCI Memphis, administrators recommended that he receive Meritorious Good Time Credit effective August 1, 1991. According to the government, that recommendation was removed pursuant to BOP policy[7] effective August 10, 1992, when Williams was transferred from FCI Memphis and to FCI Oxford. The Meritorious Good Time Credit began again on March 8, 1995, at USP Allenwood when that institution approved the staff recommendation to award such credit. Williams claims that his good time credit from Memphis was denied because of his alleged involvement in the aforementioned inmate homicide at Memphis without affording him due process.

## II. PROCEDURAL HISTORY

On September 29, 1998, Williams filed a *pro se* § 2241 habeas petition in the district court claiming: (1) that federal officials had improperly refused to delete false information contained in his PSR, i.e., the 1985 version, from his prison file (the "presentence report" claim); (2) that federal officials had violated his due process rights

---

[7]The government alleges:

> Under Program Statement 5880.30, Meritorious Good Time ("MGT") Credit initiated at an institution ends when an inmate is received by a new institution, with each receiving institution evaluating whether such credit should be awarded.

Government's Br. at 23 n. 5. Apparently MGT credit is available only for work performance, which requires an inmate's work supervisor to recommend it and the Warden to approve it. *Id.*

by not giving him a disciplinary hearing in 1992 relative to information in his prison file regarding the inmate homicide at Memphis (the "prison file" claim); and (3) that he had been denied a promotion to Pay Grade One position in his law clerk prison job due to discrimination based on his race, age and disability, and in retaliation for filing an inmate grievance (the "employment discrimination" claim). The requested relief included (1) expungement of the allegedly inaccurate PSR from his prison file; (2) either a disciplinary hearing comporting with due process or expunging information pertaining to his alleged involvement in the prison at FCI Memphis homicide from his prison file, and (3) backpay and promotion to Pay Grade One. He named as respondents the BOP, the United States Parole Commission, and three employees from USP Allenwood, viz., Warden John Fanello, Acting Warden of Programs Trish Rodman, and Acting Supervisor of Education Valerie Kepner.[8]

After several additional filings by Williams and the government, the magistrate judge concluded that since Williams' habeas claims did not challenge the length of his confinement, the habeas petition would be construed as a *Bivens* action.[9] The magistrate judge then granted an additional 15 days to supplement the record, and at the conclusion of that period, the judge issued a Report and Recommendation recommending that

---

[8] Kepner had been Williams' supervisor when he was denied the Pay Grade One assignment.

[9] *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

9

summary judgment be granted in favor of the federal entities and the individual USP Allenwood employees.[10] Williams objected arguing, in part, that he had not had an opportunity to conduct discovery. However, he did not explain how that affected the grant of summary judgment. He also claimed that the record contained sufficient evidence to preclude the grant of summary judgment.

Thereafter, the district court adopted the R&R and entered judgment in favor of the defendants. Williams filed a timely *pro se* appeal, and thereafter, we appointed counsel for Williams.[11]

### III. DISCUSSION

### A. Expungement Claims.

We have never had to decide whether to endorse the right of expungement announced in *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979), and other Circuit Courts of Appeals have expressly questioned its precedential value. *Johnson v. Rodriguez*, 110 F.3d 299, 308-09 n.13 (5th Cir. 1997). Nevertheless, Williams argues that his presentence claim and prison file expungement claim are meritorious under *Paine v. Baker*. There, the Court of Appeals for the Fourth Circuit announced that, in limited circumstances, state prisoners have a federal due process right to have "prejudicial

---

[10] During the 15 day period the magistrate set for supplementing the record, Williams neither supplemented the record, nor sought a continuance to take discovery.

[11] We ordered supplemental briefing and directed the parties to address certain specified issues in addition to any other issues the parties wanted to address.

erroneous information expunged from their prison files." 595 F.2d at 202. The court held:

> [I]n certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon to a constitutionally significant degree.

*Id.* at 201. Williams argues that he can assert *Paine v. Baker* expungement claims in a § 2241 habeas petition.

Even if we assume *arguendo* that Williams can assert a *Paine v. Baker* expungement claim in a § 2241 habeas petition, it is nevertheless clear that he is not entitled to relief on either his presentence report claim or his prison file claim. Williams admits that "subsequent jurisprudence has required proof of an implicated liberty interest or other unconstitutional conduct in order to challenge prison procedures, including information in inmate files." Williams' Br. at 25; *see Johnson v. Rodriguez*, 110 F.3d at 309 n.13.

His attempt to "correct" the 1985 version stems from his belief that it prejudiced him by causing him to be inappropriately classified in prison. However, federal inmates have no constitutional right to a particular classification. *Moody v. Dagget*, 429 U.S. 78, 88 n.9 (1976). Moreover, in *Meachum v. Fano*, 427 U.S. 215 (1976), the Court held that no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss"

11

upon the inmate. The Due Process Clause therefore does not afford Williams any right to have the 1985 version expunged from his prison files.

Williams' due process claim is similarly flawed. He claims that he was denied due process because he was not given a disciplinary hearing in connection with the murder of an inmate prior to being transferred from Memphis, or losing the aforementioned good time. He requests either a disciplinary hearing or expungement of the investigation report becuse he similarly claims that his alleged involvement in the Memphis homicide resulted in a disciplinary transfer. This claim is also meritless because a prisoner has no liberty interest in being confined at any particular prison. *Olin v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montayne v. Haymes*, 427 U.S. 236 (1976). In addition, as noted above, his transfer from Memphis was not punitive or disciplinary. Rather, the government claims, without contradiction, that he was transferred for his own protection. Accordingly, there was no due process violation.

## B. Employment Discrimination Claim.

Williams alleged that he was denied a promotion to a Pay Grade One position in his law clerk prison job because of his race.[12] The district court concluded that there was no evidence that the prison employees were motivated by discriminatory intent in not

---

[12]Williams also alleged age and disability discrimination. However, the magistrate judge found that the only issue raised during the course of administrative proceedings was race discrimination. Therefore, the magistrate judge only discussed the racial discrimination claim, and Williams did not object. Accordingly, we will limit our discussion to that claim.

selecting Williams for the Pay Grade One promotion. Accordingly, the district court granted summary judgment to the defendants.

Although inmates have no right to a particular job assignment while they are incarcerated, *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989), prison officials cannot discriminate against an inmate by making a job assignment on the basis of race. *Cruz v. Beto*, 405 U.S. 319, 321 (1972). Williams' race discrimination claim was premised on the equal protection component of the Due Process Clause of the Fifth Amendment which prohibits the government from invidiously discriminating between individuals or groups. *Bolling v. Sharpe*, 347 U.S. 497 (1954). "Proof of discriminatory racial purpose is required to establish an equal protection violation; an official act is not unconstitutional solely because it has a racially disproportionate impact." *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976) and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977)).

The familiar *McDonnell-Douglas-Burdine* burden-shifting framework applies to equal protection claims of racial discrimination. *Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir. 1997). Under that framework, the plaintiff "must first establish a prima facie case by a preponderance of the evidence." *Id.* (citations omitted). The burden then shifts to the defendant to come forward with a nondiscriminatory explanation for the challenged action. *Id.*

13

Here, it is undisputed that Williams made out a prima facie case of discrimination. He is an African-American inmate who was rejected for promotion in favor of a non-African-American inmate. Moreover, Kepner, the person responsible for making the promotion decision, said that Williams is an exceptional law clerk. Consequently, the burden shifted to the government to produce evidence that Williams was not promoted for a legitimate, nondiscriminatory reason. Initially, the government attempted to do this by offering several race neutral explanations including seniority, and the other inmate's greater responsibilities and proficiency in Spanish.

However, the district court never examined the proffered explanations to determine if they were merely a pretext for invidious discrimination. Rather, once the government proffered its explanation, the district court stopped its inquiry and concluded that there was "no indication that defendants discriminated against [Williams] in declining to promote him." Dist. Ct. Op. at 9 (App. at 35.). The court's failure to examine the defendants' explanations for pretext was error.

In order to make the requisite showing of pretext,

> the . . . plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.

*Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotations and brackets

14

omitted).

Williams made the following arguments in support of his position that the government's race neutral explanation for its hiring decision was pretext: First, he alleged that not one African-American has been promoted to Pay Grade One during the last five years, even though 85% of the prisoners at Allenwood are African-American. Second, Kepner disregarded the recommendation of Williams' direct supervisor, Brenda Krakowski, that Williams be promoted. Third, the government changed its rationale for not promoting him. Fourth, Williams claimed that he had greater seniority than the inmate who was promoted.

The government disputes Williams' evidence of pretext. However, because the district court never considered that pretext evidence, it is not necessary for us to now consider the government's critique of Williams's argument. Rather, the court's failure to examine the government's stated reasons for pretext requires remand.[13]

## C. Retaliation Claim.

Williams also alleged that the other inmate was promoted to Pay Grade One to

---

[13] Williams also argues that the district court erred because it failed to consider his Rule 56(f) motion. That rule provides that "the court may order a continuance to permit. . . discovery to be had" where the "party opposing the motion . . . cannot . . . present by affidavit facts essential to justify the party's opposition."

However, because the district court erred by granting summary judgment without considering Williams' evidence of pretext, we need not decide whether the district court also erred by not allowing Williams discovery. On remand, Williams can renew that motion.

15

retaliate against Williams for filing grievances. The district court never considered that claim, and there is therefore nothing for us to review. The district court will address that on remand.

## IV. CONCLUSION

For all of the above reasons, we will affirm the district court's grant of summary judgment in favor of the defendants on Williams' expungement claims, but we will reverse the grant of summary judgment in favor of defendants on Williams' employment discrimination claim, and remand that claim to the district court. The district court should also consider Williams' retaliation claim on remand.[14]

---

[14] On March 28, 1999, seven months after he filed his § 2241 habeas petition, Williams moved to amend the petition to add a loss of good time credits claim, in which he alleged that he lost good time credits because of the information in his prison file about his involvement in the murder at FCI Memphis. It is unclear whether the district court considered his motion. As we noted earlier, Williams' good time credits was subject to a BOP policy. The government has represented without contradiction that the policy is not related to discipline or punishment. Accordingly, Williams' claim for good time credits appears to lack merit. Moreover, neither the counseled brief, nor Williams' *pro se* brief discusses Williams' claim for good time credits. Therefore, it is waived. *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (citations omitted).

In addition, as noted above, when we appointed counsel, we posed several questions that we directed counsel to be prepared to address. One of the issues we raised was whether Williams' false and inaccurate report claim should be construed as a *Bivens* claim, a Privacy Act claim pursuant to 5 U.S.C. § 552a, an expungement claim pursuant to *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979), and/or a habeas claim pursuant to 28 U.S.C. § 2241, *see Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). Our discussion here does not address whether the claim can be addressed under the Privacy Act, and we now conclude that little discussion is necessary to dispose of that issue.

The Privacy Act gives an individual the right to request that an agency amend any records that it maintains on him or her, 5 U.S.C. § 552a(d). However, "[u]nder regulations . . . presentence reports and BOP inmate records are exempt from the

16

TO THE CLERK OF THE COURT:

    Please file the foregoing Opinion.

                                        /s/ Theodore A. McKee,
                                            Circuit Judge

DATED:

---

amendment provisions of the Act." *White v. United States Probation Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (citing 28 C.F.R. §§ 16.51(c), 16.97(a)). Consequently, Williams has no expungement claim under the Privacy Act.